UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

DEINYA PHENIX,

               *Plaintiff,*

     v.

VERA INSTITUTE OF JUSTICE, INC., LINDSAY ROSENTHAL, RYAN SHANAHAN, and JIM PARSONS,

               *Defendants.*

------------------------------------------------------------------------×

25-CV-5174

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Dr. Deinya Phenix, by her attorneys, Young & Ma LLP, complains of Defendants as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Dr. Deinya Phenix ("Plaintiff" or "Dr. Phenix") seeks damages and costs against Vera Institute of Justice, Inc. ("Vera" or the "Nonprofit"), Lindsay Rosenthal ("Lindsay"), Ryan Shanahan ("Ryan"), and Jim Parsons ("Jim")(collectively, "Defendants") for discriminating and retaliating against her based on race, sex, and disability; perpetuating pervasive race, sex, and disability stereotypes; failure to provide accommodations; and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*; § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2. Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues who provide similar or the same work and have similar or the same credentials and experience as Plaintiff in violation of N.Y. Labor Law § 194.

1

## JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII, Section 1981, and ADA.

4.  Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about December 4, 2024.

5.  Plaintiff requested a right to sue from the EEOC on or about February 24, 2025. The EEOC issued the right to sue on or about the end of March 2025.

6.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and NYLL claims as they are so related to the Title VII, Section 1981, and ADA claims that they form part of the same case or controversy.

7.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8.  Plaintiff, at all times relevant, was and is a resident of Kings County in the State of New York.

9.  Upon information and belief, at all times relevant hereto, Defendant Vera Institute of Justice, Inc. was and is a U.S. corporation incorporated in New York and headquartered in New York City.

10. Upon information and belief, Defendant Lindsay Rosenthal is an individual residing in New York and works in New York for Vera.

11. Upon information and belief, Defendant Ryan Shanahan is an individual residing in New York and works in New York for Vera.

12. Upon information and belief, Defendant Jim Parsons is an individual residing in New York and works in New York for Vera.

**STATEMENT OF FACTS**

13. Founded in New York City in 1961, Vera is now a national organization with offices in four major cities, and a team of hundreds of advocates, researchers, and policy expert. It had over $100,000,000 in contributions in 2020.

14. Dr. Phenix has a significant academic research background. She first joined as Senior Research Associate in August 2019 to the Nonprofit. Previously, she demonstrated significant quantitative research experience in behavioral science at Clover Health. She has been a professor at Medgar Evers College of the City University of New York, St. Francis College, research associate at John Jay College and other research roles at Brown University, NYU and NYC Criminal Justice Agency. In her 2022 review, Plaintiff was meeting expectations, demonstrating a human first approach and experience in inclusivity and equity. The Nonprofit acknowledged her struggles in health and on a personal level.

15. Dr. Phenix's major milestones include trained and mentored several system impacted partners and colleagues in data collection, data processing, analysis, and interpretation on prison conditions; led a National Institute of Justice funded randomized controlled trial studying the effect of Restoring Promise young adult prison initiative on safety and comparative prison culture, work included negotiating data sharing agreements; launched a collaborative randomized control project team which continues to meet to work on qualitative research on the impact of the Restoring Promise initiative; launched 3 major research studies on the Ending Girls Incarceration (EGI) team and supported 2 others across teams – 9 IRB successful appearances, 11 partner organizations engaged; managed team of competent, reliable, passionate, ethical researchers – 4 consultants, 7

scope of work documents, 18 positions filled; collaborated on fundraising, won grant from Illustrious Arnold Foundation, and completed early and mid-term grant deliverables, semi-annual federal reporting; established a structure of 15 user groups and 42 authorizations for access to secure drive plus a schematic for communicating user group membership working with Vera Tech (IT) team; analyzed over 30 datasets for Her Freedom Her Justice report; presented at 2 national conferences, on docket for an additional presentation this fall; structured and expanded the case file review research approach, and the LA case file review project is the longest running and most collaborative and inclusive of all the projects using the case file review approach.

16. Dr. Phenix generally received a raise every year due to performance and was compensated at $142,216.734 annually by August 29, 2023.

17. Defendant Ryan Shanahan hired Dr. Phenix onto the Restoring Promise group and another experienced Black male John Hart. However, it was clear that Salma Djokovic intended to continue to run the group and the Nonprofit has a disproportionate amount of White women and men in senior leadership. John handled qualitative interviews and Plaintiff handled quantitative, and they both had significantly more education and experience than Salma. Interestingly, in Spring 2020, Salma was then promoted to have equal ranking to Dr. Phenix and John to continue the Nonprofit's trend of having a White/non Black or Latina woman control each group. Anytime John or Plaintiff made a recommendation, Salma and/or Ryan would say, "we always do it this way." John sent an open letter to the women of color in the Nonprofit acknowledging difficulties that women of color face on teams and their difficulties with Black and White men. He and most Black employees recognized the inability to be promoted to succeed in this organization. This was around June 17, 2020 when BLM was at its peak and this type of transparent discussion was not

welcome any other time. In the Cure Report, minority junior level employees listed lack of opportunities as an issue. Clearly, it was a bigger issue with senior employees.

18. Dr. Phenix spoke up about these issues and Defendant Ryan specifically in the Summer of 2020. A mediation took place with Ryan in the room (very awkward to have the perpetrator in the room) and then Plaintiff was blacklisted and retaliated against. She was transferred to Defendant Lindsay Rosenthal (another White woman) in the summer of 2021 with the intention of being managed out. At the time, Lindsay was looking for more advanced research experience in Ending Girls in Incarceration. Lindsay's team is also all White and her preferred White employees were Hannah and Mahsa. She had many one on one meetings with Mahsa who controlled the relationship with NYU outside research consultants without input from Dr. Phenix, who was coming in to revamp research. When Lindsay went out on maternity March to July 2023, Mahsa and Hannah met with Lindsay's boss Margaret regularly and Plaintiff only had an opportunity at 1 meeting, which she had to initiate and even though Margaret was technically her direct boss. Dr. Phenix was not supported in the hire of Mia de Jesus Martin, who is Afro Latina with professional research experience and social service experience. The Nonprofit tried to attack Plaintiff's justice system experience and wanted a White queer candidate who had taken a class with a colleague, Jessica. Dr. Phenix had to yet again involve HR to get Mia hired but now the Nonprofit recognized Mia's positive contributions. Everything was an uphill fight for Plaintiff if the idea originated from her.

19. In early 2022, Dr. Phenix was pulled aside and told to never question Defendant Lindsay in a public meeting. In August 16, 2022, Plaintiff spoke up about bias in communication norms. Lindsay and Sarah encouraged the enforcement of email response within 24 hours at a meeting and putting words in subject heading, which would be personally difficult for Dr. Phenix given her

medical conditions. Plaintiff responded that communication is subjective and to make sure the policy is not ableist or culture biased, as the White community clearly has a separate understanding of response time and what constitutes "clear" communication. In the next one on one, Lindsay asked Dr. Phenix to please clear with her before these comments. Email practices are often a basis of discrimination against Black, Latina, Asian and all minority candidates, where the forms of communication in their families/environments they grew up in may not be the same as White families.

20. In September to November, Dr. Phenix faced major struggles to hire Mia and Defendant Lindsay rushed to hire Becca to counter Plaintiff. There was a sudden urgency to update data analysis for a report that Lindsay and Hannah decided to delay publishing for a year due to political sensitivity. Then Dr. Phenix was thrown under the bus for this California Statewide Report. Most research positions across most of the groups were headed by a White person, with the only exception in Louisiana where there is a Black woman leading research in an all/mostly Black team/Black neighborhood. Plaintiff was consistently micromanaged about the email 24 hour response time.

21. Many Black employees could not survive the Nonprofit's environment, such as Simone (program associate), Shaqueen (program associate) and Nico (research). Talia Beaulieu Hains and Asia Bowman (Black) were hired and not promoted for 3 years. They were unfairly stereotyped as having no knowledge to do more. All top department employees were White, including Defendant Jim Parsons (VP Research), Nina Siulc (Director of Research), Chris Henrickson (Director of Insights), Stephen Roberts (Associate Director of Research) and anyone on the board in the research department more than 5-7 years were mostly White. All ADRs were White or Asian – Kerry Mulligan, Jacqueline Pavilon, Jaeok Kim, Jacob Denny, Selma Djokovic, and

Niloufer Taber. As discussed, the only Black employee leading a team is Kim Mosby in Louisiana in an organization that promotes equity.

22. When Defendant Lindsay returned from a short leave at the beginning of August 2023, she blamed Dr. Phenix for the Statewide Report when it was a deadline set by another staff member on an entire polished report when Plaintiff's section was one limited section. She was blamed for a 2 entire year delay the Nonprofit decided on for political reasons. When Lindsay and Mahsa publish together, both names appeared and when Dr. Phenix publishes, somehow it is not attributed to anyone. In Plaintiff's pretextual September 12, 2023 performance improvement plan, she was attacked for not meeting high priority projects. But she had no decision making power, experienced constant micromanagement, and was subject to extra surveillance. To perform these duties, Dr. Phenix needed to have a relationship with Shabnam Javdani and Erin Godfrey at NYU who did the research consulting at NYU before her but Mahsa and Lindsay controlled the relationship. When Plaintiff expressed that it was too many emails for her medically, Lindsay would say, "we're all busy too". Dr. Phenix specifically raised discrimination and bias in this evaluation of her.

23. Subsequent to these reports, Dr. Phenix experienced continuous retaliation as in September to November 2023, Defendant Lindsay would not complete a budget or approve November conference travel for her and two direct reports. In October and November 2023, Lindsay delayed approval of November research fieldwork travel. This all made it impossible for Plaintiff to perform.

24. In mid-October, HR forced Dr. Phenix into meeting with them about her August complaint on race equity and inclusion and Defendant Lindsay, the head of HR, was very dismissive. In mid-November, Plaintiff spoke to an investigator from Verita about accommodations and therefore the Nonprofit knew of her health needs. She was promised to be protected if she participated. Dr.

Phenix expressed that she may need remote work, reduced emails and many other accommodations due to ADD. She continuously spoke about and the Nonprofit knew her medical conditions as to asthma and allergies, having a cousin and stepfather dying within a week, suicides by family members and her mother's breast cancer surgery.

25. Dr. Phenix went on short leaves in January and August 2023. Her chronic depression was documented in notes, social anxiety, and John Henryism triggered by racial trauma. She has bladder issues, gastritis, bruxism, torn tendon (can't balance) and struggles with her circadian rhythm. In these discussions, it was apparent that Plaintiff needed more time to respond to emails/reduced emails, that she could not be on Slack responding to chats from colleagues, she needed meetings recorded to review later, she needed solo processing time (not long meetings with supervisor but more spread out shorter impactful meetings), transparency in deadlines (not last minute), flexible work schedule, autonomy in daily calendar and specific projects, remote work, understanding of her exhaustion and social anxiety among other needs associated with the conditions she disclosed. Instead of accommodating her, Dr. Phenix was terminated on February 8, 2024 for pretextual reasons.

26. Dr. Phenix believes it is entirely impossible for a black female with disabilities to be treated the same or receive more career opportunities at Vera if reporting to and/or under the leadership of the aforementioned managers. Defendant Jim Parsons, the VP of Research, was also instrumental in the micromanaging and moving targets and the discrimination, failure to accommodate and retaliation Plaintiff faced and yet remains on the leadership team.

27. Dr. Phenix witnessed another Black employee, Elizabeth Ige, suffer from this paradigm of White senior employees with Black women at the bottom. She was highly discouraged by how Vera chose to treat Plaintiff against a White woman like Selma who did not have Dr. Phenix's

pedigree or experience. As a result, Plaintiff believes Elizabeth Ige resigned her employment with Vera.

28. Another employee, Tammy Cho, was also highly discouraged by these practices and also noticed text messages and other evidence that those on medical leave or with medical conditions cannot be promoted. There are countless other examples of witnesses/employees discouraged by these practices that either resigned, got terminated or are still suffering.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Race and Sex Discrimination and Hostile Work Environment
### in Violation of Title VII
### (Against Defendant Vera)

29. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

30. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of Defendant Vera.

31. Vera was Plaintiff's "employer" within the meaning of Title VII.

32. Plaintiff was a female "employee" of Vera and is a member of protected classes within the meaning of Title VII.

33. At all relevant times, the Nonprofit was aware of Plaintiff's race and sex.

34. By the conduct alleged in this Complaint, Vera discriminated against Plaintiff with respect to the compensation, terms, conditions and privileges of her employment because of her race and sex.

35. Plaintiff was subjected to a pervasive hostile work environment by the Defendant's conduct.

36. The Nonprofit engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's race and sex in the manner described in the Statement of Facts.

37. Plaintiff suffered adverse employment actions and continuing damage by the Defendant due to her race and sex and the hostile work environment that Plaintiff suffered at Vera because of her race and sex.

38. As a direct and proximate result of the Nonprofit's unlawful and willful conduct, Plaintiff has suffered and will continues to suffer the loss of income and damage to reputation. Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

39. As a further direct and proximate result of the Nonprofit's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

40. Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Vera under Title VII.

## SECOND CAUSE OF ACTION
### Race Discrimination and Hostile Work Environment in Violation of Section 1981
**(Against All Defendants)**

41. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

42. Section 1981 prohibits entities from discriminating against an employee on the basis of race.

43. Defendants discriminated against Plaintiff by subjecting her to hostile, discriminatory treatment and offensive, racially motivated comments and conduct.

44. As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

45. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**THIRD CAUSE OF ACTION**
**Disability Discrimination in Violation of**
**the Americans with Disabilities Act**
**(Against Defendant Vera)**

46. At all relevant times, Plaintiff was an "employee" of Vera under the ADA, 42 U.S.C. § 12111(4).

47. Defendant Vera is an "employer" under the ADA, 42 U.S.C. § 12111(5).

48. Defendant Vera violated the ADA by discriminating against Plaintiff based on her disabilities in connection with employment determinations including, inter alia, pay, promotion, job assignments, training, leave, benefits, and other employment related activities.

49. Plaintiff suffers from protected disabilities under the ADA, which she made known to his employer Vera.

50. Plaintiff's disability was used by the Nonprofit, wrongfully and without basis, to deny Plaintiff the pay, privileges, and other benefits to which she was rightfully entitled by, inter alia, limiting, segregating, or classifying Plaintiff in a way that adversely affects the opportunities or status of Plaintiff because of her disability.

51. In fact, the Nonprofit utilized Plaintiff's disability to torture her and make her uncomfortable and in ways that were detrimental to her health and safety.

52. The Nonprofit's discrimination against Plaintiff based on her disability was intentional and willful.

53. By reason of the foregoing, Plaintiff is entitled to recover, inter alia, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Vera.

## FOURTH CAUSE OF ACTION
### Race, Sex, and Disability Discrimination and Hostile Work Environment in Violation of NYSHRL
### (Against All Defendants)

54. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

55. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

56. At all relevant times, the Nonprofit was Plaintiff's "employer" within the meaning of the NYSHRL.

57. At all relevant times, Plaintiff was an "employee" of Vera within the meaning of the NYSHRL.

58. At all times, Defendants were aware of Plaintiff's race, sex, and disability.

59. Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's race, sex, and disability in the manner described in the Statement of Facts.

60. Plaintiff is severely limited in her career by Defendants' unlawful conduct due to her race, sex, and disability.

61.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, sex, and disability as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

62.     Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

63.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

64.     Plaintiff's damages include, inter alia, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

65.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

### FIFTH CAUSE OF ACTION
### Race, Sex, and Disability Discrimination and Hostile Work Environment
### in Violation of NYCHRL
### (Against All Defendants)

66.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

67.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

68. At all relevant times, Defendants were an employer and person within the meaning of the NYCHRL.

69. At all relevant times, Plaintiff was an employee and person within the meaning of the NYCHRL.

70. At all times, Defendants were aware of Plaintiff's race, sex, and disability.

71. Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's race, sex, and disability in the manner described in the Statement of Facts.

72. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

73. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and a hostile work environment.

74. Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

75. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

76. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

77. Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of Title VII, Section 1981, and ADA
### (Against Defendant Vera)
### and the NYSHRL and NYCHRL
### (Against All Defendants)

78. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

79. Defendant Vera violated Title VII, Section 1981, and ADA, and all Defendants violated the NYSHRL and NYCHRL, because they knowingly retaliated against Plaintiff for objecting to the discrimination at Vera, as alleged in the Statement of Facts above.

80. Defendants were aware that Plaintiff engaged in the protected activities alleged above.

81. Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above.

82. The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

83. As a direct and proximate result of the unlawful retaliation by Defendants, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

## SEVENTH CAUSE OF ACTION
### Failure to Provide Reasonable Accommodation
### in Violation of ADA (against Defendant Vera) and NYSHRL and NYCHRL
### (Against All Defendants)

84. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

85. The ADA, NYSHRL, and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with a disability.

86. Defendants failed to provide a reasonable accommodation for Plaintiff's disability by refusing to engage in the mandatory interactive process and cooperative dialogue in good faith to identify a reasonable accommodation for her caretaking conditions/disabilities.

87. As such, Defendant Vera has violated the ADA, and all Defendants have violated the NYSHRL and NYCHRL.

88. Additionally, Defendants failed to engage in a cooperative dialogue pursuant to the October 15, 2018 changes to NYCHRL after obtaining multiple notices of Plaintiff's medical needs, and failed to provide a credible written explanation as to why accommodations were not possible for Defendants.

89. Defendants' termination of Plaintiff and refusal to make reasonable accommodation for Plaintiff on the basis of her disabilities constituted unlawful discrimination in violation of § 8-502 of the NYCHRL.

90. As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

91. Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, back pay, front pay, emotional distress damages, reasonable attorney's fees and compensatory damages from Defendants under the NYCHRL.

### EIGHTH CAUSE OF ACTION
### Violation of New York State Labor Law § 194
### (against all Defendants)

92. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

93. Plaintiff was an "employee" of Defendants as defined under N.Y. Lab. Law § 190(2).

94. Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

95. Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's race, sex, and disability.

96. Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bond fide factor, but rather is based on Plaintiff's status in protected classes.

97. The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Facts.

98. As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

### JURY DEMAND

99. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendants as follows:

A. Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated: (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; (ii) § 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; (iii) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; (iv) the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*; (v) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*; (vi) New York Labor Law § 194; and (vii) that Defendants' foregoing acts of discrimination, harassment, and retaliation against Plaintiff were intentional and willful.

B. Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C. Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest;

D. Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

E. Award the Plaintiff punitive damages;

F. Award the Plaintiff liquidated damages;

G. Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.   Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.   Such other and further relief as the court deems appropriate to be determined at trial.

Dated: New York, New York
　　　　June 20, 2025

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　Tiffany Ma, Esq.
　　　　　　　　　　　　　　　　　　　Young & Ma LLP
　　　　　　　　　　　　　　　　　　　445 Park Avenue, 9th Floor
　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　T: 646-379-7703
　　　　　　　　　　　　　　　　　　　F: 866-839-4306
　　　　　　　　　　　　　　　　　　　tma@youngandma.com